Good morning, Your Honors. My name is Katherine Lewis, and I am appearing on behalf of the petitioner, Mr. Carlos Coloma Johnson. The threshold issue in this case is the I.J.'s adverse credibility finding, which is not supported by substantial evidence. The I.J.'s decision rests mainly on his finding that Mr. Johnson's testimony is implausible. However, the I.J.'s decision is rife with speculation and conjecture. For example, the I.J. discusses Mr. Johnson's testimony about being cut off by a vehicle. And in his decision, he states, quote, It's equally consistent with a simple road rage incident, but very much inconsistent with an assassination attempt by a group of trained killers, unquote. Your standard here, you have to, we have to be compelled, right, as far as that goes. And obviously, we can't evaluate this in a vacuum. And there's a couple of things that I think are part of this not being in a vacuum. That your client came here twice, not requesting asylum, and went back. And when asked about that, he said he really wasn't, quote, unquote, interested at that time. And then there are, you know, the I.J. seems to find inconsistencies, whether it's the Grupo Colina, or he clearly was, he clearly was involved in apprehending high-level narcotics traffickers. And then also, I mean, we have this whole progression of his career in the sense that he seems to get promoted, and then there are things where he's in what I think would be the equivalent of what we would call internal investigations. They call it something else down there. And he's in that before he claims that all the harassment started, and then he's in it again after. So, you know, when you're talking about, you know, now, I mean, obviously, that sort of incident could be road rage, or it could be an assassination attempt. But when we look at everything, we have to look at the whole picture. And so I'm sort of curious about, I mean, there are, you know, he doesn't seem to stick with exactly one story about what all the problems are. Well, I think in this case, Mr. Johnson is serving as a police officer for over 20 years, and so he is going after multiple people. And in this case, there are potential different people who are persecuting him. But the IJ, and I think, you know, he conflates the adverse credibility finding with the on account of analysis and kind of says, well, the on account of analysis is what is the real issue here in this case. But his the way that he approaches that, he kind of misapprehends Mr. Johnson's burden in demonstrating the case. The IJ says, you know, there are two equally, quote, there are two equally plausible versions of events, one supporting the claim and one not. The party with the burden necessarily failed to meet that burden. And that's at AR-64. But that's simply not the correct standard that the judge is applying. Instead, we need to look at the Board of Immigration Appeals has said in Matter Fuentes that asylum applicant bears the burden of establishing facts on which a reasonable person would fear that the danger arises on account of one of these protected grounds. Here, the IJ says, well, there are two plausible options. And I think that it's just as equally likely that he was targeted by drug traffickers that he convicted. But the judge didn't, shouldn't have done the analysis in that way. He was supposed to say whether or not Mr. Johnson's fears, but of harm by this Grupo Colina, who he believed was targeting him, was reasonable. And he didn't do that analysis the correct way. And in this case the adverse credibility, if we uphold the adverse, just hypothetically, if we uphold that, does the rest of this case go away? Does he lose? It doesn't, Your Honor. There are a couple of reasons. Tell me why. He, the testimony of his wife and daughter, the judge did not make an explicit adverse credibility finding on either of their testimonies. Do you have a case that requires when to make the same finding that you do on the applicant for asylum? Do you have a case that says you have to do that as to every witness? Your Honor, I don't have anything right in front of me at the moment. But my understanding of the law of this circuit is that a judge, if they don't make an explicit adverse credibility finding, then that testimony should be true. Yeah, on the petitioner, yes. But do you have that on witnesses that testify? How are they adverse, anyway? What's that? How does their testimony help particularly so he had to find them incredible? What they actually know is that he got phone calls. Yeah. They personally each had testified that they received some of these threatening phone calls. As I said, they received the phone. What they know is they got phone calls. That's all we know. And that they still get phone calls. They've been getting them for years, which, as I recall, the IJ said, well, that's interesting, that this vicious government group that knows everything that's going on in the world is still calling three years later to threaten him. That's one reason he thought, well, maybe it's these drug dealers and people who don't even know that he's around or not. Whatever. But the point is he didn't say they were incredible in that respect, I don't believe. Well, I think on that point, the wife testifies she got the phone calls and also testifies about the timing of those phone calls, which I think is critical in this case, the circumstantial evidence, which alone in this circuit can be enough to prove the on account of. And the wife testifies that he refused to join the group of Kalina, and then it was within a month or a month and a half that these threatening phone calls began. And though there was no physical harm to Mr. Johnson, there were some attempts at his life that he was led to believe were reasonably that they were by the group of Kalina. And so it was not just threats over a period of time. Now, what attempts on his life are you talking about? There are a couple of instances. One, for example, is after he had retired from the police force, a car tried to run him off the road. Okay. That's the one that they said the road rage. But then there was another one with someone, another police officer, that it would appear to me from the record he gave inconsistent accounts of, in that, one, he said it was someone that he had previously disciplined, a police officer that was, in fact, arrested for his what he did. And then there – and then otherwise, what sort of looked like a workplace violence situation of a supervisor. And then he gave another account that he thought that it was, well, they just didn't do anything to stop the guy. Well, I don't think that there's anything inconsistent in his testimony on this point. The fact that, you know, the person was late and there were some issues, but that he also might have perceived this person who had been put onto his force with, you know, five days previously, and he thought the motive may have been something else, that's simply not inconsistent that both of those things could have happened. And this person was arrested. Did this guy get arrested? He was arrested, but nothing happened. He was simply transferred by a helicopter, and there was no disciplinary action taken against this person who attempted – made an attempt on his life. So I just – there's – Well, it was a peculiar attempt on his life. The guy said – the guy had a gun and said, I'm going to shoot you.  I think Mr. Coloma immediately disarmed him and stuck his gun into the guy's mouth. You know. Well, in this case, Mr. Johnson had been a police officer for a number of years and was a superior officer, so the fact that he might be able to disarm a potential assassin doesn't seem inconsistent. And his testimony on that point is simply not inconsistent. No, but it isn't crazy for the – you know, people always talk about credibility as there has to be some direct conflict. Or if somebody draws a reason – an inference from the facts, oh, well, that's speculation. I mean, we can call it speculation if we want to say it's bad, and we call it an inference if we don't. You know, again, it's like the car thing. This Coloma group is – not Coloma, the – Group of Colina, Your Honor. Colina Group is really pretty incompetent. It sends the most incompetent assassins in the world to get this guy, even though they're the top people in the government, right? And I would like to reserve some time for rebuttal, but just to briefly comment on that point. The IJ is just speculating about how this group might carry out its tactics and that there might be a difference in opinion as to how a group might do its tactics. And they may choose to continue with threats as opposed to actually executing them at a certain time is a tactical decision of a – of a subversive group that we can't speculate about their motives. Thank you, and I'd like to reserve. Roberts. Good morning, Your Honor. Emanuel Palazzo, the Respondent of this case, the Attorney General. The Court should deny the petition in this case because the evidence of record does not compel the conclusion that Mr. Coloma Johnson suffered past persecution on account of a protected ground at the hands of the government of Peru. I think Your Honor has put his finger on the essence of the adverse credibility finding, which is not inconsistency so much, but that the fact is that Mr. Coloma Johnson testified to many, many incidents that occurred at his job, occurred with his one meeting with Grupo. There were numerous instances he testified to, but what's missing in all that testimony is a identification of who the perpetrators are in this case. Why isn't it – let me interrupt you for a second, because conceptually it's sort of an odd case, but we see this quite often. Why isn't that really just a matter of proof instead of adverse credibility? I mean, I just don't – I don't get the – I mean, I think there's some force to the argument here that this I.J., and some do, just speculated, said, discounted, well, I – they said, well, you'd have to believe they're incompetent killers to believe this. Well, we don't know whether they're competent killers or not. We have – we're just in the same position the I.J. is. We have no idea. And the I.J. didn't have any idea. I think the reason the I.J. is speculating is he's trying to understand what happened in this case, and he's not getting any help from the Petitioner. The fact is what – I'm talking more conceptually. I'm not necessarily addressing the case. But why isn't that really a burden of proof issue instead of an adverse credibility finding? I find it difficult. I'm just – I'm going to give you an opportunity to respond. Well, again – I find it difficult to take speculation, saying, well, this couldn't have occurred because I think things are different in that world, and say that should be an adverse credibility finding to which we ought to defer. I can understand the argument, say, well, you didn't meet your burden of proof. But that's a question of fact and weighing facts and not saying you're a liar. Your Honor, I don't think that the I.J. thought that the Petitioner was lying. What he didn't accept, and perhaps he used the term credibility somewhat loosely, I think what he's really saying is your suppositions about who was doing this, that you have no proof of who were the perpetrators. Your only proof is your belief and your speculation about who the perpetrators were, and that's what I don't believe. You are telling me, sir, that it's this group. But according to your testimony, it seems hard to believe it could be that group because they are apparently a – they're directed by the government – the President and his right-hand man of Peru. They have the most qualified police and army officers in their employ. They called you thousands of times daily, and yet not – you were never harmed. So I believe – I think, if I understand your question, Your Honor, and I know you're going beyond this case a bit. I don't think he's saying you're lying. He's saying – Well, he sort of did, though, because analytically we go through, okay, is there adverse credibility, and therefore we discount everything that the Petitioner says. If we do, that's the end of the case. All right. If we accept it as credible, then what do we – and it seems to me, in this case, illustrates it, that many IJs just say, well, I – sort of blur the line, if you will, but also say, I think this person's not telling the truth because I find the story implausible. And in this case, he gives some explanations that the IJ doesn't address. And I read it the same way you did. I didn't think that the IJ necessarily disbelieved him. He just didn't think it rose to the level of proof necessary. But he labeled it adverse credibility, and that's what we've got to look for. I'll be very upfront with you. In our brief, we take the position that he made an adverse credibility finding. And I can see why you would take that position. In my reading of the record, I don't believe he flat out went that far. He did use the term credibility. But if he had made an adverse credibility finding in this case, as you say, he would have disbelieved his entire testimony. There would be no reason to speculate because adverse credibility dooms you as far as your burden of proof. Well, isn't part of the problem that the standards that seem to be established maybe by our cases is, well, if the person's credible, then you have to accept everything he says. And we say that over and over again. We say it. And that's probably a very bad locution on our part. But it's like, well, if he's credible, then whatever he says is true. And so it seems to me a trier of fact looking at that because we've parsed the thing out. If it went to a trier of fact in a district court, they'd just say, we find against the plaintiff or whatever for this, that, and the other reason. Here we sort of parse everything out. And it seems to me that's a problem for an IJ. Okay. So if we take everything this guy says is true, then he says they did it. Is that true? Or is it speculation on his part? We don't have to take his speculation as true. That's the essence of our argument. Isn't that the difficulty that happens in this? I think it's an astute observation because what the IJ – I do believe, reading the transcript, the IJ believed these things all happened. But the only evidence about who did these things was – came from the Petitioner's speculation. He had – he has not – in all these incidents, he has not one shred of proof, hard proof, aside from his speculation about who made these phone calls, who pulled him over, who was the police officer. Well, I guess, how is that different than saying – because he says this is why it happened. So how is that different than just saying, yeah, they happened, but I don't believe you as to why they happened. And the reasons I don't believe you as to why they happened is because you came here twice before. You said you weren't interested in asylum, and so you went back. And I mean – Your Honor, I think the reason he didn't believe those aspects of it is because he gave no foundation for knowing what – who the perpetrators were. Well, I guess what I'm saying is if it's – if there is not an adverse credibility, if we say the adverse credibility is not supported, I don't see how you win. Because then our case law does say that everything is presumed to be true, and wouldn't that include his speculation? Well, I don't think – I don't think it goes that far, Your Honor. I mean, I think it's a matter of proof. But I understand what you – both of you are saying, too. I mean, it's – immigration law is different. I mean, we put this through the crucible of a trial in civil court. Nobody would be speculating. You'd just be dealing with the hard facts. And, you know, on the other hand, people don't usually come up and hand a card and say, you know, I'm here from X group, and I'm here to persecute you on an enumerated grounds in the INA, either. I mean, things happen a little – don't happen that cleanly in other countries. Well, those are two ranges, Your Honor. I mean, you're kind of sitting in the middle. I mean, but I would submit that even if – what keeps getting lost in the shuffle, I believe, is even if everything that Mr. Coloma Johnson said is true, I think the evidence does not compel the conclusion that what happened to him caused a gross level of past persecution. He was never harmed. And there was no credible – the fact is, I know in this circuit death threats alone, I think, with a little bit more, can be persecution. But the fact is, after several thousand death threats and no remotely plausible attempt to harm him by disposed callers, those calls lose a lot of their weight and force as far as their impact. I would characterize them as harassment calls after a certain point. I don't want to minimize what he went through. Obviously, he was traumatized. But – and secondly, the fact is, the record has – for this Court to overturn this decision, as Your Honor said, the record has to compel the conclusion. There can be no other conclusion but that Grupo Colina did all these things that he testified to, did them to him on account of a protected ground which has yet to be articulated. It wasn't a political opinion. Well, if it's just an adverse credibility finding, then you say, well, no, we disagree with the finding. Now, we'll send it back, and you can decide on the record whether or not that satisfies the other standards of the INA. I mean, that's what we do on adverse credibility cases. Well, I think, Your Honor – And so we don't – you know, I understand the second leap, but I don't think we can do that here, and I don't think you necessarily want us to do that here. Well, I think, Your Honor, if – all I'm asking is that you look at the Idris decision. Oh, yeah. Because he does go through the evidence, and he does make these findings, I believe, alternatively, if you want to call it that. It's – I think it's a pretty thorough opinion. It may not be laid out as carefully as some others I've seen, but I think it's all there, and I don't think he just said, I find you – I don't believe your story. I'm denying your claim. He went further than that, and he looked at the evidence, and I do believe he discussed whether your evidence constitutes past persecution, and I do believe he discussed whether these things that happened to him were on account of a protected ground. So I don't think it's – it's a flat-out adverse credibility case where he said, because I find you adverse – because I make a finding of adverse credibility, you can't meet your burden of proof, and I'm denying your claim. So I can tell the Court is – No, no. Well, I'm happy to talk with you. Yeah, my only other point besides the adverse credibility is that I think the other elements of the asylum claim are simply not borne out by the evidence. And so in addition to the adverse credibility issue, we have that. So thank you, Your Honor. I would ask you to deny the petition for review in this case. Thank you for your argument. Thank you. You have about a minute for rebuttal. Thank you. I'd like to make just two brief points. One, in terms of the return trips to Peru, I think it's important to look at all of the circumstances. And Mr. Johnson did talk about how he was concerned about his family and wanting to protect them. He was hoping the conditions would change, and that the circumstances of how he conducted himself on those return trips, I think, is critical because he kept a very low profile. Also, I want to – on the other issue in this case, the recent decision of Canales-Vargas v. Gonzalez, which we cited in a 28J letter. It's 441 F. 3rd, 739. This Court noted that the case law does not require a victim of past persecution to identify the precise reason why she has been a target of persecution. And it also points to the fact that circumstantial evidence is critical in establishing who that persecutor might have been and the motive for that persecution. And I think the facts of that case are – and the timing of the threats are similar to the timing of the threats and the transfer of Mr. Johnson in his case. All right. Thank you. Thank you for your argument. The case is surely submitted, and we'll be in recess for the morning.
judges: Fernandez, Thomas, Callahan